**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     v.<br><br>ADOBE, INC., a corporation,<br>MANINDER SAWHNEY, individually, and<br>DAVID WADHWANI, individually,<br><br>           Defendants. | Case No. 5:24-cv-03630-NW-SVK<br><br>~~STIPULATED~~ **ORDER FOR**<br>**PERMANENT INJUNCTION,**<br>**CIVIL PENALTY JUDGMENT, AND**<br>**OTHER RELIEF** |

Plaintiff United States of America and Defendants Adobe, Inc., Maninder Sawhney, and David Wadhwani, hereby stipulate to the entry of this Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint alleges that Defendants violated Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, in connection with its marketing and sale of subscriptions for its design and productivity software applications.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in their Answer and in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.      **"Billing Information"** means any data that enables any person to access a customer's account, such as a credit card, checking, savings, or similar financial account, utility bill, mortgage loan account, or debit card.

B.      **"Charge," "Charged,"** or **"Charging"** means any attempt to collect money or other consideration from a consumer, including causing Billing Information to be submitted for payment, including against a consumer's credit card, debit card, bank account, or other financial account.

C.      **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable, which means it is not placed behind a hyperlink, link out, or other similar mechanism requiring user engagement in order to access or reveal the disclosure.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.    **"Covered Good or Service"** means one or more of the following Adobe products or services offered through a subscription with a Negative Option Feature in the United States: Creative Cloud Pro, Acrobat, Photoshop, Premiere, Illustrator, Adobe Stock, Adobe Express, InDesign, After Effects, Adobe Substance 3D Stager, Adobe Substance 3D Painter, Adobe Substance 3D Sampler, Adobe Substance 3D Designer, Adobe Substance 3D Modeler, Photoshop Express, Frame.io, Adobe Fresco, Media Encoder, Adobe Color, Capture, Behance, Portfolio, Audition, Animate, Bridge, Character

Animator, Dreamweaver, Mixamo, and Lightroom, any product or service similar to any of the foregoing, or any successor products or services of any of the foregoing.

E.  **"Negative Option Feature"** means, in an offer or agreement to sell or provide any product or service, a provision under which the consumer's silence or failure to take affirmative action to reject a product or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

F.  **"Free Trial"** means the offering of a Covered Good or Service trial subscription on a temporary, free basis, and includes such trials that convert, at the end of a defined period, into a paid for subscription, unless a consumer takes steps to prevent or stop such Charges.

<b>ORDER</b>

## I.    REQUIRED DISCLOSURES

IT IS ORDERED that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any Covered Good or Service with a Negative Option Feature, including any Free Trial, are permanently restrained and enjoined from failing to Clearly and Conspicuously disclose all material terms of such a transaction involving a Negative Option Feature before obtaining the consumer's billing information.

For any Covered Good or Service, this includes, but is not limited to, the following material terms:

A.  that subscribers will be automatically Charged, and how often they will be Charged, until they take steps to prevent or stop such Charges;

B.  the duration of any subscription commitment (*e.g.*, an annual commitment or monthly commitment), and the periodic amount owed during the duration of that commitment;

C.  the existence of any early cancellation fee in connection with any commitment; and

D.  how the early cancellation fee is calculated (for applicable products), which must be Clearly and Conspicuously disclosed within the main body of any enrollment flow. This disclosure must appear on at least one page in the enrollment flow where a consumer does any of the following: receives plan pricing information, provides billing information or payment, or selects or signs up for a plan. For the avoidance of doubt, this requirement does not require any of these specific pages to be included in the

4

enrollment flow or to be included as separate, discrete pages. This disclosure must use diction and syntax that is understandable to ordinary consumers in a way that enables them to readily calculate the fee that would apply in any situation.

For purposes of this Order, none of the disclosures required by Sections I.A-D above can be made only in a way that requires navigating to a separate window or page, such as by clicking a hyperlink, link, tooltip, or other similar mechanism.

IT IS FURTHER ORDERED that, for any Covered Good or Service, to the extent that the main body of any enrollment flow does not Clearly and Conspicuously state either the dollar amount of any applicable cancellation fee or the potential dollar amount range of any applicable cancellation fee which varies according to when a consumer cancels or any other dynamic factors, Adobe shall maintain a separate webpage that is linked to from the body of the enrollment flow and includes additional information about any applicable early termination fee, including the specific dollar amount or, where the applicable cancellation fee varies according to when a consumer cancels or any other dynamic factors, the way the cancellation fee is calculated and the specific dollar amount range of what the fee could be.

## II.    FREE TRIAL REMINDER EMAIL NOTIFICATIONS

IT IS FURTHER ORDERED that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, in promoting or offering for sale any Free Trial as part of a Covered Good or Service, are required to provide email (or similar electronic) notifications containing certain conspicuous disclosures to consumers who have signed up for the Free Trial when the consumer signs up for the free trial, and two days prior to conversion of the Free Trial into a paid subscription for free trials that last longer than 7 days.

These emails must provide Clear and Conspicuous disclosures of the following information:

A.    that the consumer has signed up for a Free Trial that will convert into a paid subscription, if not cancelled beforehand, on [DATE];

B.    the duration of any applicable subscription commitment after the Free Trial converts into a paid subscription;

C.    the existence of any early cancellation fee in connection with the subscription after the Free Trial converts into a paid subscription;

D.  how the early cancellation fee is calculated (for applicable products); and

E.  the dollar amount of any applicable cancellation fee, or where the applicable cancellation fee varies according to when a consumer cancels or any other dynamic factors, the way the cancellation fee is calculated and the dollar amount range of what the fee could be.

## III.  OBTAINING EXPRESS INFORMED CONSENT

IT IS FURTHER ORDERED that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any Covered Good or Service with a Negative Option Feature, are permanently restrained and enjoined from failing to obtain the consumer's express informed consent before Charging the consumer. In obtaining such express informed consent, they must obtain the consumer's express, affirmative consent to the Negative Option Feature and any applicable cancellation fee.

## IV.  SIMPLE CANCELLATION MECHANISMS

IT IS FURTHER ORDERED that Defendants, their officers, agents, employees, and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any Covered Good or Service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide simple mechanisms for a consumer to: cancel the Negative Option Feature; avoid being Charged, or Charged an increased amount, for the good or service; and immediately stop any recurring Charges. The simple mechanisms must be easy for consumers to find and must not be difficult, costly, confusing, or time consuming, and must be provided through the same medium the consumer used to consent to the Negative Option Feature.

Defendants must not have a process intended to generally require a consumer to engage in any interaction with employees or agents (such as customer support agents, whether through phone, an online chat function, or other means) if such interaction was not required for the consumer to sign up for a subscription. Similarly, if a consumer was able to sign up for a subscription by navigating an online flow and clicking a subscription button, the consumer must generally be able to cancel the subscription by navigating an online flow and clicking a cancellation button.

The simple mechanism may not be deactivated, removed, or rendered inaccessible or unusable for any consumers based on the timing of the cancellation attempt, issues with a consumer's payment or billing card or information, or based on the particular consumer segment or category of subscriber into which the consumer falls. Defendants can ensure that a customer pays outstanding balances prior to cancelling.

## V.    MONETARY JUDGMENT AND OTHER RELIEF

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of Seventy-Five Million Dollars ($75,000,000) is entered in favor of Plaintiff against Defendant Adobe, Inc., as a civil penalty. Adobe is ordered to pay to Plaintiff, by making payment to the Treasurer of the United States, Seventy-Five Million Dollars ($75,000,000). Such payment must be made within fourteen (14) days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of Plaintiff.

B.    Adobe relinquishes domain and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

C.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by Plaintiff or the Commission in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order.

D.    Adobe agrees that this monetary judgment represents a civil penalty owed to the United States, is not compensation for actual pecuniary loss, and, therefore, is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

E.    Adobe acknowledges that its Taxpayer Identification Numbers, which Adobe must submit to Plaintiff, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

F.    Adobe further agrees to offer consumers Seventy-Five Million Dollars ($75,000,000) in free services. The parties agree that these free services are not compensation for actual pecuniary loss, if any.

## VI. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgment of receipt of this Order.

A.     Each Defendant, within seven (7) days of entry of this Order, must submit to Plaintiff and the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury;

B.     For five (5) years after entry of this Order, Defendant Adobe, Inc. must deliver a copy of this Order to: (1) all principals, officers, directors, managers, and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VII. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission and Plaintiff:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact that representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) describe the activities of each Negative Option Feature related to the Covered Goods and Services; (c) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (d) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission or Plaintiff.

B.     For five (5) years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1. Defendant Adobe, Inc. must report any change in: (a) any designated point of contact; or (b) the structure of any entity that Defendant Adobe, Inc. has any ownership interest in or controls directly

or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.    Each Defendant must submit to the Commission and Plaintiff notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within fourteen (14) days of its filing.

D.    Any submission to the Commission or Plaintiff required by this Order to be sworn under penalty of penalty of perjury must be and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____ " and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission or Plaintiff representative in writing, all submissions to the Commission and Plaintiff pursuant to this Order must be emailed to consumer.compliance@usdoj.gov, DEbrief@ftc.gov, and to counsel of record for this matter. The subject line must begin: US v. Adobe., 5:24-cv-03630 (N.D. Cal.).

## VIII.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendant Adobe, Inc. must create certain records for five (5) years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant Adobe, Inc. must create and retain the following records in connection with Negative Option Feature related to Covered Goods or Services:

A.    Accounting records showing the revenues from all such products or services sold;

B.    Records of consumer complaints and refund requests received in writing concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response;

C.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission or Plaintiff; and

D.    An exemplary digital version of each page or screen of the enrollment and cancellation processes for the United States market, including what appears behind all links, hover-overs, tooltips, etc.,

on those pages, for products and services sold with a Negative Option feature for all platforms, applications, and devices.

## IX.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.   Within 30 days of receipt of a written request from a representative of the Commission or Plaintiff, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with each Defendant. Defendant Adobe, Inc. must permit representatives of the Commission and Plaintiff to interview any employee or other Person affiliated with Adobe who has agreed to such an interview. The Person interviewed may have counsel present.

C.   The Commission and Plaintiff may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits Plaintiff's or the Commission's lawful use of compulsory process, including pursuant to Sections 9 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 49, 57b-1.

## X.   ORDER TERMINATION DATE

IT IS FURTHER ORDERED that this Order will remain in effect for 10 years after its entry by this Court, after which point it will expire and no longer impose any requirements on Defendants.

## XI.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## XII.   NEGATIVE OPTION RULE

IT IS FURTHER ORDERED that, to the extent the Commission promulgates an amended rule or regulation governing negative options or subscriptions, the requirements of that rule (as long as it remains applicable, binding, and in effect) will supersede any requirements of Sections I through IV of this Order for which the Negative Option Rule makes compliance either infeasible or impossible.

**IT IS SO ORDERED** this 10th day of April, 2026.

_____
Hon. Noël Wise
UNITED STATES DISTRICT JUDGE